UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 15-cv-81210-KAM

KELVIN RANCE,

     Plaintiff,

vs.

RIC BRADSHAW, as Sheriff of
Palm Beach County, et al.

     Defendants.

_____/

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss (DE 14) and Defendants'

Motion to Strike (DE 21). For the following reasons, the motion to dismiss is granted in part and the

motion to strike is denied.

### I. Background

On October 21, 2013, at about 2:44 a.m., *pro se* Plaintiff Kelvin Rance was driving his van

eastbound on Eighth Avenue South toward J Street in Lake Worth, Florida. (DE 1 ¶¶ 6–7.)[1] After

he observed Rance driving in Lake Worth for an hour, Defendant Officer Brian Knipper of the Palm

Beach Sheriff's Office ("PBSO") radioed Officer Robert Ferrell, who was driving an undercover

patrol car, to follow and surveil Rance. (DE 1 ¶ 20.) Officer Knipper did not observe any other

behavior of Rance other than him diving for an hour. (DE 1 ¶ 21.)

While driving, Rance noticed a woman and males on the corner of Eighth Avenue South and

J Street.  The woman was "flapping her arm in distress" and shouting "Hey, hey." (DE ¶ 8.)

---

[1] Rance interchangeably refers to Eighth *Avenue* South and Eighth *Street* South throughout his
complaint. The correct street name is Eighth Avenue South.

Eventually, Rance stopped his van passed the corner of Eighth Avenue South and J Street where the group was standing and rolled down his window to find out what the woman wanted. (DE 1 ¶ 11.) No vehicles were in front of or behind Rance's van when he stopped. (DE 1 ¶ 24.) The woman asked Rance to drive her to Checkers and Rance agreed. (DE 1 ¶ 12–13.) Before he agreed, and while talking to the woman, Rance "looked around at the scene" through his vehicle mirrors "to see if someone was going to come and harm or rob him" and only let the woman into his car once he determined "there was no harm going to come to" him. (DE ¶¶ 12–13.)

After the woman entered Rance's van and Rance drove about 20 feet, Officer Ferrell turned on his siren lights in his unmarked car and pulled Rance over. (DE 1 ¶ 13–14.) According to Rance, Officer Ferrell approached him and screamed, "You'd better tell me what I want to hear or you're in trouble." (DE 1 ¶ 14.) Officer Ferrell did not ask Rance why he picked up a passenger in the street, but he issued a traffic warning for "Unlawful Loading and Unloading of Passengers" at approximately 4:18 a.m. (DE 1 ¶ 14.)

During this time, Officer Knipper's marked PBSO vehicle was directly behind Officer Ferrell's vehicle, also with its siren lights on. (DE 1 ¶ 28.) Officer Knipper ordered the woman out of the van and questioned her separately. (DE 1 ¶ 49.) Ultimately, Officer Knipper let the woman go and she walked back to the street corner. (DE 1 ¶ 51.) Rance remained detained. (DE 1 ¶ 51.)

During the stop, Officer Ferrell asked Rance for consent to search his van. (DE 1 ¶ 53.) While Rance does not specifically state how he responded to that request, he makes the allegation that Officer Ferrell searched his van without permission. (DE 1 ¶ 35.) During the search, Officer Ferrell found a pharmacy pill vial with one Cialis pill and two Alprazolam (Xanax) pills. (DE ¶ 54.)

The pill vial did not have a prescription on it. (DE 1 ¶ 60.) Rance provided Officer Ferrell

2

with a medical list of all of his prescriptions, and Alprazolam was not on the list. (DE 1 ¶ 61.) The medical list was, however, provided in a manila file folder that allegedly also contained Rance's medical lab reports, medical articles, and a pharmacy receipt indicating that Rance had recently filled a prescription for Alprazolam. (DE 1 ¶ 62.) The complaint is silent as to whether Rance told Officer Ferrell of the receipt or whether Officer Ferrell otherwise had reason to know about it. Rance allegedly told Officer Ferrell that he had a prescription for Alprazolam and that the Cialis pill was a sample from his doctor. (DE 1 ¶ 63.) Apparently disbelieving Rance, Officer Ferrell handcuffed him and placed him under arrest for violating sections 499.03(1) and 893.13(6)(a) of the Florida statutes, which concern possession of certain drugs without a prescription.[2] (DE 1 ¶ 61, 63, 64.)

While Rance was handcuffed, Officer Ferrell questioned where the pill vial with a prescription label for the Alprazolam was, if he really had a prescription. (DE 1 ¶ 64.) Rance responded that his wife could bring the vial to the scene if Officer Ferrell called her. (DE 1 ¶ 64.) Officer Ferrell called Rance's wife from Rance's cell phone and told her that he was arrested for possessing the Alprazolam. (DE 1 ¶ 65.) Rance's wife said that she could bring the Alprazolam vial with the prescription label on it to the scene, but Officer Ferrell said, "No, it's too late." (DE 1 ¶ 65.)

Instead of towing the van, Officer Ferrell had Rance's wife come to the scene and move the van to a gas station. (DE 1 ¶ 66.) The complaint is silent as to whether Rance's wife brought the alleged Alprazolam vial with the prescription label. After Rance's wife moved the van, Officer Ferrell took Rance to the Palm Beach County Jail for booking and processing. (DE 1 ¶¶ 61, 67–68.)

---

[2] Throughout his complaint, Rance confuses sections 499.03(1) with section 499.003(32). The exhibits attached to Rance's complaint show that section 499.03(1) is the correct statute. Section 499.003(32) defines "medical gas" under the Florida Drug and Cosmetic Act, and Rance's citation to this statute is clearly an error. This error does not affect the Court's ruling on Defendants' motion.

3

Rance was released after his initial appearance that morning, and the state ultimately dropped the charges against Rance. (DE 1 ¶¶ 69, 71, 119.)

Rance filed this lawsuit against Officer Ferrell and Officer Knipper in their individual capacities and against Palm Beach County Sheriff Ric Bradshaw in his official capacity. As against Officer Ferrell and Officer Knipper, Rance asserts several claims under 42. U.S.C. § 1983 for alleged violations of his rights against unreasonable searches and seizures as well as state law claims for false arrest, false imprisonment, invasion of privacy, and malicious prosecution. All the claims against Sheriff Bradshaw appear to be based on vicarious liability. Defendants jointly moved to dismiss the complaint.[3]

## II. Legal Standard

Rule 8(a) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim" that will give the defendant fair notice of what the plaintiff's claim is and the ground on which it rests. The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007)

---

[3] In a few parts of his response to the motion, Rance mistakenly cited Exhibit B of his complaint where he meant to cite Exhibit E. After Defendants filed their reply, Rance filed an amended response that corrected these typographical errors. Not disputing that this is the only change Rance made, Defendants moved to strike Rance's amended response as an unauthorized filing, which led to a full round of briefing. The amended response is functionally no different than a simple notice to the Court that references to Exhibit B are actually references to Exhibit E. The motion to strike is an unnecessary expenditure of resources and is denied. Also, while Defendants base their motion on Local Rule 7.1, Defendants' motion itself ironically fails to comply with the good-faith conferral requirement of Local Rule 7.1(a)(3) and is denied on that basis as well.

(internal citation and alteration omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. The Court must accept all of the plaintiff's factual allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

The Supreme Court has established that a court should afford a *pro se* litigant wide leeway in pleadings. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam) (holding allegations of a *pro se* complaint to a less stringent standard than formal pleadings drafted by lawyers). This leniency, however, does not give the Court license to rewrite an otherwise deficient pleading in order to sustain an action. *GJR Invs., Inc., v. Cnty. of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998). *Pro se* litigants are required to meet certain essential burdens in their pleadings. *See Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).

### III. Discussion

#### A. Claims Against Officer Ferrell

#### 1. Principles Governing Section 1983 Claims

Section 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction

thereof to the deprivation of any rights, privileges, or immunities secured by the
Constitution and laws, shall be liable to the party injured in an action at law, suit in
equity, or other proper proceeding for redress . . . .

In this case, Rance's § 1983 claims are predicated on various alleged violations of his Fourth

Amendment rights against unreasonable searches and seizures, as applicable via the Fourteenth

Amendment.

A public official performing a discretionary function enjoys qualified immunity in a § 1983

action for damages if his or her conduct "does not violate clearly established federal statutory or

constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457

U.S. 800, 818 (1982). "The purpose of this immunity is to allow government officials to carry out

their discretionary duties without the fear of personal liability or harassing litigation." *Lee v. Ferraro*,

284 F.3d 1188, 1194 (11th Cir. 2002). "[Q]ualified immunity questions should be resolved at the

earliest possible stage of a litigation." *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987).

For qualified immunity to apply, the public official must first show that he or she "was acting

within the scope of his or her discretionary authority." *Moore v. Pederson*, 806 F.3d 1036, 1042

(11th Cir. 2015) (en banc). The term "discretionary authority" "include[s] all actions of a

governmental official that (1) were undertaken pursuant to the performance of his duties, and (2)

were within the scope of his authority." *Id.* (alteration in original) (quoting *Jordan v. Doe*, 38 F.3d

1559, 1566 (11th Cir. 1994)). Here, Officer Ferrell unquestionably was acting within his

discretionary authority for purposes of qualified immunity. *See Lee*, 284 F.3d at 1194.

Once it is established that the governmental official was acting within the scope of his

discretionary authority, the burden shifts to the plaintiff to demonstrate that qualified immunity is

inappropriate. *Moore*, 806 F.3d at 1042. To satisfy this burden, the plaintiff must show that (1) the

facts demonstrate that the governmental official violated his constitutional right and (2) the right was clearly established at the time of the government official's alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The Court may address these inquiries in whichever order it sees fit under the circumstances of the case. *Id.* at 242.

If the violation of a right is found, it is not enough that the right was clearly established in a general, abstract sense. The Supreme Court has held "that the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640. This does not mean that "the very action in question" must have "previously been held unlawful." *Id.* Rather, it means "that in the light of pre-existing law the unlawfulness must be apparent." "[I]t is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present," and the Supreme Court has held that qualified immunity applies in such cases. *Id.* at 641.

Based on these principles, the Eleventh Circuit has adopted an "arguable probable cause" standard for wrongful arrest cases. *Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir. 1990). Under this standard, an officer is cloaked with qualified immunity from liability for an arrest lacking probable cause where "a reasonable officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in the light of well-established law." *Gold v. City of Miami*, 121 F.3d 1442, 1445 (11th Cir. 1997) (per curiam) (citation and emphasis omitted).

Either case law existing at the time of the alleged violation or specific constitutional or statutory provisions may clearly establish the law such that a government official can be put on

notice that his actions will violate a constitutional or statutory right. *See Goebert v. Lee Cty.*, 510 F.3d 1312, 1330 (11th Cir. 2007); *Vinyard v. Wilson*, 311 F.3d 1340, 1350–51 (11th Cir. 2002). When the words of a statute or constitutional provision are relied upon in the absence of case law, they must apply with "obvious clarity." *Vinyard*, 311 F.3d at 1350. Regarding case law, the Eleventh Circuit has held that only "decisions of the U.S. Supreme Court, the United States Court of Appeals for the Eleventh Circuit, and the highest court of the pertinent state" can clearly establish the law. *Marsh v. Butler Cty.*, 268 F.3d 1014, 1032 n.10 (11th Cir. 2001) (en banc), *abrogated on other grounds*, *Twombly*, 550 U.S. 544. The facts of cases used to show that a right is clearly established need not be materially similar to the facts alleged, but the unlawfulness of the alleged conduct must be sufficiently apparent to provide the official fair warning that his acts were unconstitutional. *Fils v. City of Aventura*, 647 F.3d 1272, 1292 (11th Cir. 2011); *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011) (en banc); *Holmes v. Kucynda*, 321 F.3d 1069, 1078 (11th Cir. 2003).

**2. Section 1983 Claim Based on Officer Ferrell's Surveillance of Rance**

To the extent Rance asserts that Officer Ferrell's surveillance by following him while he was driving on a public road violated his Fourth Amendment rights, such surveillance was not a "search" within the meaning of the Fourth Amendment. *United States v. Knotts*, 460 U.S. 276, 281–82 (1983). It was also clearly not a seizure as Rance remained free to drive wherever he wanted while Officer Ferrell secretly surveilled him. Therefore, Rance's § 1983 claim is dismissed to the extent it is based on Officer Ferrell's surveillance.

**3. Section 1983 Claim Based on Officer Ferrell's Stop of Rance**

A "police officer may stop a vehicle '[w]hen there is . . . probable cause to believe that a driver is violating any one of the multitude of applicable traffic and equipment regulations' relating

to the operation of motor vehicles." *United States v. Strickland*, 902 F.2d 937, 940 (11th Cir. 1990) (alterations in original) (quoting *Delaware v. Prouse*, 440 U.S. 648, 661 (1979)). This is true regardless of the officer's subjective motive for the stop. *See Whren v. United States*, 517 U.S. 806, 813, 817 (1996). Probable cause exists when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense. *Durruthy v. Pastor*, 351 F.3d 1080, 1088 (11th Cir. 2003).

Here, Defendants argue that Officer Ferrell's probable cause for the stop was based on section 316.1945(1) of the Florida Statutes. The statue provides:

> Except when necessary to avoid conflict with other traffic, or in compliance with law or the directions of a police officer or official traffic control device, no person shall:
> . . . .
>
> (b) Stand or park a vehicle, whether occupied or not, except momentarily to pick up or discharge a passenger or passengers: . . . .
>
> 3. Within 20 feet of a crosswalk at an intersection.

Fla. Stat. § 316.1945(1). "Standing" is defined as "[t]he halting of a vehicle, whether occupied or not, otherwise than temporarily, for the purpose of, and while actually engaged in, receiving or discharging passengers, as may be permitted by law under this chapter." Fla. Stat. § 316.003(49).

If there was a crosswalk at the intersection and Rance stopped his van within (or reasonably close to within) 20 feet of it, Officer Ferrell had probable cause to believe that Rance violated section 316.1945(1)(b). Rance did not "momentarily" pick up a passenger. Instead, he stopped, rolled down his window, engaged the woman in conversation, and took the time to examine the scene "to see if someone was going to come and harm or rob him" before allowing the woman to enter his van. (DE

1 ¶ 11–13.) This was necessarily longer than the permissible momentary stop that section 316.1945(1)(b) contemplates.

Even if Rance's stop was momentary, given that Rance engaged the woman in conversation for more than a brief period of time and looked around before she entered Rance's van, Officer Ferrell could have reasonably inferred that Rance stopped his van to speak to the woman rather than to pick her up. Indeed, such an inference would be correct. Rance did not stop to pick up the woman. He stopped to find out what she wanted. Only after speaking with her did Rance decide to let her into his van. This would take Rance's stop outside the exception for picking up passengers at all, regardless of his later decision to allow the woman to enter his van. The exception is for stops to pick up passengers; it does not apply to stops made for the purpose of talking to strangers.

The complaint, however, provides few details about the intersection where the woman was standing and is unclear as to the exact location where Rance stopped his van to speak to the woman. Defendants' argument that the Court may simply infer that there was a crosswalk at the intersection is rejected. *See Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (noting that on a motion to dismiss "the allegations in the complaint are viewed in the light most favorable to the plaintiff"). And even if there was a crosswalk at the intersection, the Court cannot speculate that Rance was within 20 feet of it when he picked up the woman. In his complaint, Rance alleges that he drove *past* the intersection and then stopped to speak to the woman. (DE 1 ¶¶ 10–11.) The complaint is silent as to how far past the intersection Rance stopped his van.

Thus, there are questions of fact as to whether there was a crosswalk at the intersection and, if so, whether Rance was within 20 feet of it when he stopped his van. Because the Court cannot resolve these factual issues on a motion to dismiss, Defendants' motion is denied as to Rance's §

1983 claim against Officer Ferrell for an illegal traffic stop.[4]

### 4. Section 1983 Claim Based on Officer Ferrell's Search of Rance's Van

Based on the facts alleged in the complaint, Officer Ferrell's search of Rance's van violated Rance's clearly established Fourth Amendment rights. Prior to an arrest, a warrantless search of an operational vehicle is permitted under the Fourth Amendment only if there is probable cause to believe the vehicle contains contraband or evidence of a crime (or some other exception to the warrant requirement applies). *United States v. Tamari*, 454 F.3d 1259, 1261 (11th Cir. 2006). At the time Officer Ferrell searched Rance's van, he had not placed Rance under arrest and had no probable cause that Rance committed any offense other than possibly unlawfully standing his van. Even if Officer Ferrell had probable cause that Rance unlawfully stood his van, he had no reasonable basis to believe that Rance's van contained contraband or evidence of that offense.[5] *See Arizona v. Gant*, 556 U.S. 332, 343 (2009) ("In many cases, as when a recent occupant is arrested for a traffic violation, there will be no reasonable basis to believe the vehicle contains relevant evidence.").

The only other exception to the warrant requirement that Defendants raise is consent. At this stage, the Court rejects Defendants' argument that Rance consented to the search. Though Rance's pleading is not a model of clarity, and some of his allegations could be read as implicitly suggesting that he consented to the search, he does allege that Officer Ferrell searched his van "without [his]

---

[4] The Court notes that section 316.1945(1)(b) provides other locations where stops such as Rance's are prohibited. For example, even if Rance was not within 20 feet of a crosswalk at the intersection when he stopped to speak to the woman, Officer Ferrell would still have probable cause for the stop if Rance stopped his van, *inter alia*, in front of a driveway or within 15 feet of a fire hydrant. Fla. Stat. § 316.1945(b)(1)–(2). Summary judgment may be appropriate if Rance stopped at any of the locations listed in this provision.

[5] Also, that offense is not even a "crime" under Florida law. *See* Fla. Stat. § 316.1945(4).

permission." (DE 1 ¶ 35.) As the Court must accept Rance's allegations as true and construe his allegations in the light most favorable to him, the Court must accept the truth of this allegation despite other potentially ambiguous allegations in the complaint. Thus, the Court denies Defendants' motion as to Rance's § 1983 claim against Officer Ferrell for an illegal search of his van.

### 5. Section 1983 Claim Based on Officer Ferrell's Arrest of Rance

"The existence of probable cause at the time of arrest . . .  constitutes an absolute bar to a section 1983 action for false arrest." *Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004). Even if Officer Ferrell's stop or search of Rance's van violated the Fourth Amendment, the fruits of the search—the Alprazolam—can still be considered to determine whether Officer Ferrell had probable cause to arrest Rance. *See Black v. Wigington*, 811 F.3d 1259, 1267–69  (11th Cir. 2016); *Wren v. Towe*, 130 F.3d 1154, 1158–59 (5th Cir. 1997) (per curiam). "It does not matter whether that evidence was discovered in compliance with the Fourth Amendment because the exclusionary rule does not apply in a civil suit against police officers." *Black*, 811 F.3d at 1269.

Based on the evidence discovered in Rance's van, Officer Ferrell had probable cause to arrest Rance for a violation of section 893.13(6)(a). The statute prohibits the "possession of a controlled substance unless such controlled substance was lawfully obtained from a practitioner or pursuant to a valid prescription or order of a practitioner while acting in the course of his or her professional practice." Fla. Stat. § 893.13(6)(a). Alprazolam is a controlled substance under Florida law. Fla. Stat. § 893.03(4)(a). Officer Ferrell found the Alprazolam in a pill vial that did not have a prescription label on it. Also, Rance provided Officer Ferrell with a medical list of all of his prescriptions, and Alprazolam was not on the list. These facts provided Officer Ferrell with probable cause that Rance illegally possessed the Alprazolam without a prescription.

Rance alleges that the list of his prescriptions that he provided Officer Ferrell, which did not include Alprazolam, was in a folder that also contained medical lab reports, medical journals, and a pharmacy receipt. The pharmacy receipt, which is attached as an exhibit to Rance's complaint, is not a typical store receipt, but instead lists Rance's name, the name of the pharmacy, the name of the doctor, the name of the drug and number of miligrams, and how many refills were left. (DE 1 at 51.) The Court does not consider the receipt in its probable cause analysis, however, because based on the complaint it appears that the receipt was buried in the folder among numerous other papers and Officer Ferrell was not alerted to its existence.

While it is well-established that "an officer may not choose to ignore information that has been offered to him or her" or "conduct an investigation in a biased fashion or elect not to obtain easily discoverable facts," it is equally well-established that a police officer "is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Kingsland*, 382 F.3d at 1229 (citation omitted). Here, the allegations of the complaint do not show that Officer Ferrell conducted his investigation in a biased fashion or elected not to obtain facts from the receipt. Rance provided Officer Ferrell with a list of prescriptions that omitted Alprazolam. Afterward, Officer Ferrell was under no obligation to continue independently rummaging through multiple documents in Rance's folder in search of exculpatory evidence.

Officer Ferrell also was under no obligation to wait for Rance's wife to bring the alleged pill vial with the prescription label. A probable cause determination is based on evidence reasonably available to the officer at the time of arrest. *Id.* at 1228. The alleged pill vial was claimed to be with Rance's wife, who was not at the scene. Thus, this is not a case where the officer "turned a blind eye to *immediately available* exculpatory information." *Id.* at 1229 n.10 (emphasis added). A contrary

rule would unreasonably require an officer to wait at the scene of an arrest every time a suspect's spouse claims she can prove the suspect's innocence if allowed time to arrive at the scene. Unsurprisingly, Rance cites no case holding that the Fourth Amendment imposes such a requirement.

In this case, however, Officer Ferrell actually was willing to wait for Rance's wife to arrive at the scene. While he allegedly told her it was "too late" to bring the pill vial, he did wait for Rance's wife to arrive so she could move Rance's van. If provided with a prescription at that point, it would have been unreasonable for Officer Ferrell to continue with the arrest—it would not be "too late" merely because Rance was already in handcuffs. But that did not happen. The complaint contains no indication that Rance's wife brought the pill vial to the scene and showed it to Officer Ferrell. Therefore, Officer Ferrell's probable cause to arrest Rance was not vitiated.

The Court also rejects Rance's arguments regarding the sufficiency of the traffic warning or charging documents. These arguments are irrelevant to whether Officer Ferrell had probable cause or arguable probable cause to make an arrest. The Fourth Amendment does not require that, at the time of the stop or arrest, Rance be given notice of the offense on which probable cause is based. *See Devenpeck v. Alford*, 543 U.S. 146, 155 (2004) ("While it is assuredly good police practice to inform a person of the reason for his arrest at the time he is taken into custody, we have never held that to be constitutionally required."). Indeed, the actual offense for which Officer Ferrell arrested Rance is immaterial; all that matters is whether Officer Ferrell had probable cause to arrest Rance for any crime. *See id.* at 153 ("[An arresting officer's] subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause."); *Durruthy*, 351 F.3d at 1089 n.6 ("While Durruthy was charged with violating only Fla. Stat. § 843.02, Pastor is shielded by qualified immunity so long as she had probable cause to arrest Durruthy for *any* offense."); *Bailey*

*v. Bd. of Cty. Comm'rs of Alachua Cty.*, 956 F.2d 1112, 1119 n.4 (11th Cir. 1992) ("The validity of

an arrest does not turn on the offense announced by the officer at the time of the arrest.").

Because Officer Ferrell had probable cause to arrest Rance for possession of a controlled

substance without a prescription, the Court will dismiss Rance's § 1983 claim to the extent it is

based on his arrest. This dismissal will be without prejudice, however, because at this point it is not

clear that an amendment will be futile.

### 6. Remaining Section 1983 Claims Against Officer Ferrell

Rance's remaining § 1983 claims against Officer Ferrell are meritless and require little

discussion. The § 1983 claim for malicious prosecution fails because, as noted *supra*, there was

probable cause that Rance illegally possessed the Alprazolam. *See Kingsland*, 382 F.3d at 1234

(listing "absence of probable cause" as an element of § 1983 claim for malicious prosecution).

Rance's § 1983 claim for "falsifying reason for initial stop and detention" fails because Rance does

not allege that Officer Ferrell falsified or fabricated anything. Even if Officer Ferrell allegedly lacked

probable cause for the stop, there are no allegations that Officer Ferrell fabricated evidence or

falsified facts to manufacture probable cause. Finally, because the Court has already concluded that

Rance's § 1983 claim based on his arrest fails, it necessarily follows that his claim for "unreasonably

extending detention" must also fail.[6] Accordingly, these remaining § 1983 claims are dismissed.

### 7. State Law Claims Against Officer Ferrell

Rance asserts state-law claims against Officer Ferrell for false arrest, false imprisonment,

malicious prosecution, and invasion of privacy. Defendants fail to address the invasion of privacy

---

[6] To the extent the claim for "unreasonably extending detention" is based on the extension caused
by the search, the claim is subsumed in the illegal search claim, which is not dismissed.

claim in their motion, so the Court addresses only the remaining state law claims.

As already noted with respect to Rance's § 1983 claims, Officer Ferrell had probable cause that Rance illegally possessed the Alprazolam. Probable cause is an affirmative defense to a false arrest claim under Florida law.[7] *Daniel v. Vill. of Royal Palm Beach*, 889 So. 2d 988, 990 (Fla. Dist. Ct. App. 2004). Also, the "absence of probable cause" is an element of a malicious prosecution claim under Florida law. *Durkin v. Davis*, 814 So. 2d 1246, 1248 (Fla. Dist. Ct. App. 2002). Because probable cause was present, both of these claims must be dismissed.

Rance's false imprisonment claim, however, survives Defendants' motion to dismiss. "False arrest and false imprisonment are closely related, but false imprisonment is a broader common law tort; false arrest is only one of several methods of committing false imprisonment." *Mathis v. Coats*, 24 So. 3d 1284, 1289 (Fla. Dist. Ct. App. 2010). Under the facts of this case, the initial traffic stop serves as a basis for a false imprisonment claim independent of the later arrest. Therefore, the causes of action are not identical in this case. Defendants' only argument with respect to this claim is that Officer Ferrell had probable cause to initiate the stop. As noted *supra*, whether Officer Ferrell had probable cause for the initial stop (as opposed to the later arrest) is subject to factual issues. Defendants thus provide no adequate basis to dismiss the false imprisonment claim to the extent it is based on the initial traffic stop, and their motion is denied as to this claim.

### B. Claims Against Officer Knipper

The claims against Officer Knipper are identical to those asserted against Officer Ferrell. As Officer Knipper had even less involvement in the alleged wrongful acts than Officer Ferrell, all the

---

[7] An affirmative defense may be considered on a motion to dismiss when the defense is apparent on the face of the complaint. *Hudson Drydocks Inc. v. Wyatt Yachts Inc.*, 760 F.2d 1144, 1146 n.3 (11th Cir. 1985).

claims against Officer Ferrell that the Court dismissed are also dismissed as to Officer Knipper. The Court thus only considers whether Rance states a claim against Officer Knipper for an illegal stop or search under § 1983 and for invasion of privacy or false imprisonment under state law.

Based on the complaint, Officer Knipper's actions with respect to Rance essentially amount to directing Officer Ferrell to surveil Rance and being present when Officer Ferrell stopped Rance, searched Rance's van, and arrested Rance. Officer Knipper did not stop Rance, search the van, or arrest Rance. While Rance broadly alleges that Officer Ferrell and Officer Knipper unreasonably searched his van, Rance's specific factual allegations make clear that only Officer Ferrell conducted the actual search while Officer Knipper was merely present. Such specific facts control over conflicting general allegations.[8] *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205–06 (11th Cir. 2007); *Infante v. Bank of Am. Corp.*, 680 F. Supp. 2d 1298, 1304 (S.D. Fla. 2009), *aff'd*, 468 F. App'x 918 (11th Cir. 2012).

Rance fails to state any claim against Officer Knipper. Assuming *arguendo* that Officer Knipper violated the Fourth Amendment by failing to intervene to prevent Officer Ferrell's allegedly unconstitutional stop or search, Officer Knipper has qualified immunity. Multiple courts in this circuit have noted that the Eleventh Circuit has recognized such a theory of "bystander" liability only in the excessive force context and that it is unclear whether such a theory extends beyond this context. *E.g.*, *Kelley v. City of Fairfield*, No. 2:13-CV-01012-MHH, 2015 WL 4229872, at *4 n.5 (N.D. Ala. July 13, 2015); *Tarantino v. Citrus Cty. Gov't*, No. 5:12-CV-434-OC-32PRL, 2014 WL

---

[8] This differs from the allegations regarding consent, discussed *supra*, because in that analysis specific allegations controlled over potentially ambiguous allegations, which must be construed in Rance's favor. Here, on the other hand, unambiguous specific allegations control over conflicting general and conclusory allegations.

4385550, at \*14 (M.D. Fla. Sept. 4, 2014); *Roddy v. City of Huntsville*, 947 F. Supp. 2d 1271, 1300 (N.D. Ala. 2013), *aff'd*, 580 F. App'x 844 (11th Cir. 2014); *Mehta v. Foskey*, 877 F. Supp. 2d 1367, 1380–81 (S.D. Ga. 2012). Rance does not cite any decision of the Supreme Court, the Eleventh Circuit, or the Florida Supreme Court that clearly establishes that a non-supervisory officer's failure to intervene to prevent another officer's unconstitutional conduct violates a person's constitutional rights outside the excessive force context. Therefore, Officer Knipper is at least entitled to qualified immunity for failing to intervene to prevent an allegedly illegal stop or search. As Officer Knipper did not perform the traffic stop, the state-law false imprisonment claim against him is also dismissed.

Furthermore, though not addressed by Defendants, it is clear to the Court that Rance's state-law invasion of privacy claim against Officer Knipper must fail. The basis of this claim is an illegal search conducted by Officer Ferrell, not Officer Knipper. Because it is patently obvious from the facts alleged in the complaint that this claim fails against Officer Knipper, it is dismissed *sua sponte*. *See Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1248 (11th Cir. 2015) (per curiam) ("An exception to this requirement [to provide notice before a *sua sponte* dismissal] exists . . . when the complaint is patently frivolous."); *Baker v. Dir., U.S. Parole Comm'n*, 916 F.2d 725, 727 (D.C. Cir. 1990) (per curiam) (holding that *sua sponte* dismissal of claim is appropriate where it is patently obvious that plaintiff cannot prevail on the facts alleged in his complaint).

### C. Claims Against Sheriff Bradshaw

The claims against Sheriff Bradshaw are all based solely on a theory of vicarious liability for the actions of Officer Ferrell and Officer Knipper. Rance does not specifically assert a vicarious liability claim. He instead labels his claim as "Damages" and states that Sheriff Bradshaw "thru [sic] the actions of his Deputy Sheriffs Robert Ferrell and Brian Knipper at the traffic stop on October 21,

2013, illegally seized and searched Plaintiff's person [and] property without consent and further without legal cause." (DE 1 ¶ 107.) Rance also alleges that "at all times material" Officer Ferrell and Officer Knipper were acting within the scope of their employment for Sheriff Bradshaw. (DE 1 ¶ 4.) Given Rance's *pro se* status and the fact that the underlying claims are based on Officer Ferrell's and Officer Knipper's alleged misconduct, the Court liberally construes these allegations to plead a vicarious liability claim against Sheriff Bradshaw adequately.

As all the claims against Sheriff Bradshaw are based on vicarious liability, they are dismissed to the extent the same underlying claims are dismissed as to Officer Ferrell and Officer Knipper. Furthermore, Sheriff Bradshaw cannot be subject to vicarious liability based on the remaining § 1983 claims against Officer Ferrell because vicarious liability is not a basis for liability under § 1983. *See Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 692–95 (1978). Therefore, all claims against Sheriff Bradshaw are dismissed except for Rance's claims for vicarious liability based on the invasion of privacy and false imprisonment claims against Officer Ferrell.[9]

### IV. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

(1) Defendants' Motion to Dismiss (DE 14) is **GRANTED IN PART**.

(2) All claims against Defendant Brian Knipper are **DISMISSED**.

(3) All claims against Defendant Robert Ferrell are **DISMISSED** except for the state-law

---

[9] The Court notes that section 768.28 of the Florida statutes might apply to these claims. If it does, these claims can only be successful against *either* Officer Ferrell or Sheriff Bradhsaw, but not both, depending on whether Officer Ferrell "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28(9)(a). At this point, however, no party has addressed the applicability of this statute with regard to the remaining claims.

claims for false imprisonment (only with regard to the initial traffic stop) and invasion of privacy and the § 1983 claims for an illegal stop and an illegal search.

(4) All claims against Defendant Sheriff Ric Bradshaw in his official capacity are **DISMISSED** except for the claims for vicarious liability based on the state-law invasion of privacy and false imprisonment claims against Defendant Ferrell.

(5) Defendants' Motion to Dismiss (DE 14) is otherwise **DENIED**.

(6) Defendants' Motion to Strike (DE 21) is **DENIED**.

**DONE AND ORDERED** in chambers at West Palm Beach, Palm Beach County, Florida, this 8th day of June, 2016.

_____

KENNETH A. MARRA
United States District Judge